## DAVID C. NICKERSON vs. ISAIAH SPINDELL & another.

Barnstable.　April 2, 1895. — June 19, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Action — Co-owners of Steamer — Plea in Abatement — Evidence — Telegraphic Message — Instructions.*

In an action against two of several owners of a steamer, one of whom was the managing agent, for expenses incurred and services rendered in the superintendence of the building of the steamer, the contention that an action at law will not lie as the plaintiff was a part owner of the steamer cannot be maintained if the jury are warranted in finding, either that the plaintiff never actually became a part owner, or that, if his ownership was complete, a new arrangement was made which left him as if it had never existed.

Two of the owners of a steamer who are sued for expenses incurred and services rendered relative thereto are liable as if they were the sole owners, if they fail to plead in abatement the nonjoinder of the other owners.

In an action against A. and B., two of several owners of a steamer, for expenses incurred and services rendered in the superintendence of the building of the steamer, the signing by A. and B. with others of an agreement to take the amounts in the ownership set against their respective names, "the same to be under the management of A. & Co.," and of an agreement to pay "A., managing owner, the sums set opposite our names for the purpose of paying outstanding bills against said boat to date, the surplus amount to be used as working capital for the said boat," and the testimony that B. visited the steamer and suggested a certain name for her, warrant a finding that both A. and B. were part owners in her.

In an action against A. and B., two of several owners of a steamer, for expenses incurred and services rendered in the superintendence of the building of the steamer, it is competent for the plaintiff to show, as bearing upon the defence, that the plaintiff rendered his services and paid his money gratuitously, that he was then engaged in other business at which he was earning a certain amount per day, and also that when he rendered the services he expected to be paid for them; and he may also testify to the price per day that his services were fairly worth.

When the sender of a telegraphic message takes the initiative, the message as delivered may, as between him and the person to whom it is sent, be treated as the original, in the absence of evidence to show mistake in the transmission of it, and, on a proper foundation being laid, secondary evidence of the contents of the telegram is admissible.

In an action against A. and B., two of several owners of a steamer, for expenses incurred and services rendered in the superintendence of the building of the steamer, an instruction to the jury, "that if the plaintiff rendered the services and incurred the expenses in question at the request of A., acting in his own behalf and representing the defendant B., and if the plaintiff rendered said services expecting to be paid for them, he would be entitled to recover the value of his services and the expenses incurred by him," not given as the whole law of the case, but to be considered in connection with the other instructions, which required the jury to determine the relation of the plaintiff to the transaction and to the defendant at the time of bringing the suit, is correct.

KNOWLTON, J.   There was evidence to show that the plaintiff performed the services and incurred the expenses set out in his declaration, in superintending the building of a steamer for the defendants and others who were the owners of her, and that he did this at the request of the defendant Spindell, who was the managing agent of the owners.

It is contended that there can be no recovery, inasmuch as the plaintiff was one of the signers of the agreement under which the steamer was built.   But this was merely an agreement on the part of each of the subscribers to it to take a share in the enterprise, and to pay the managing agents a stated sum whenever they should ask for it.   It was entered into as a preliminary to the purchase or the construction of a steamboat, and when the plaintiff signed it with the others it was contemplated that he should be the commander of the boat when she was put to use, and should own a share in her.   But at some time the plan was changed, and the plaintiff did not become the captain of the boat, nor does it appear whether he ever became the owner of any share in her.   He never paid, and apparently was never asked to pay anything under Paper A, and he was not among the signers of Paper B, who are described as the "stockholders in steamer Kearsarge." *   There was also evidence that the defendant Spindell said that he did not consider the plaintiff

---

* Paper A was an agreement of the signers, among whom were the plaintiff and the defendants Spindell and Messer, to take the amounts set opposite their "names in a steamboat to be purchased or built, the same to be under the management of A. & Co."   Paper B was an agreement signed by the defendants and others, described "as stockholders in steamer Kearsarge, . . . . to pay to Isaiah Spindell, managing owner, the sums set opposite our names for the purpose of paying outstanding bills against said boat to date, the surplus amount to be used as working capital for the said boat."

an owner in the steamer. Assuming that he was originally expected to become a part owner, the jury might have been warranted in finding, either that he never actually became one, or that, if his ownership was complete, a new arrangement was made which left him as if it had never existed. Upon a finding that he rendered services and expended money in the construction of the boat at the request of the managing agent, the law would imply a contract to pay for them in the absence of anything to rebut the ordinary presumption. Even if he had done this as one of the owners, he would have been entitled to contribution from the others, although, so long as their relations remained unchanged, he could not have maintained an action against them at common law. *Duff* v. *Maguire*, 99 Mass. 300. *Terry* v. *Brightman*, 132 Mass. 318, 319. If he was one of the proprietors of the business at the time of rendering his services, and if it was afterwards understood and agreed between him and the other owners that his ownership should cease and that his rights should be determined in the same way as if he had never signed the first agreement, he could have recovered, notwithstanding his former interest. *Sikes* v. *Work*, 6 Gray, 433.

The defendants might have pleaded in abatement the nonjoinder of the other owners, but in the absence of such a plea they are liable as if they were the sole owners. The signing of Paper B as well as Paper A by both of the defendants, and the testimony that the defendant Messer visited the steamer and suggested the name Kearsarge for her, warranted a finding that they were both part owners in her.

One of the defences relied upon was that the plaintiff rendered his services and paid his money gratuitously. As bearing upon that defence, it was competent for the plaintiff to show that he was then engaged in other business, at which he was earning from three to ten dollars per day. As affecting the probabilities, this fact would furnish a legitimate argument against the defendants' contention. *Parker* v. *Coburn*, 10 Allen, 82. *Upton* v. *Winchester*, 106 Mass. 330. *Norris* v. *Spofford*, 127 Mass. 85. Upon the same proposition, he might testify that when he rendered the services he expected to be paid for them. Not that his expectation would furnish a ground for recovery if there were not facts to create a liability otherwise, but if he was act-

ing voluntarily and making a gift of his money and services without then disclosing it, he could not afterwards change his mind and recover pay for what he did gratuitously, even if the other circumstances were such that, looking to them alone, the law would imply a contract to pay. It was therefore competent for him to negative this part of the defendants' contention by his testimony that he was not acting gratuitously. It was also competent for him to testify to the price per day that his services were fairly worth. *Kendall* v. *May*, 10 Allen, 59.

When the sender of a telegraphic message takes the initiative, the message as delivered may, as between him and the person to whom it is sent, be treated as the original, in the absence of evidence to show mistake in the transmission of it. Whether we should go further, and hold that the telegraph company is so far the agent of the sender as to bind him by their errors in sending it, it is unnecessary in this case to decide. There is much authority in support of this last proposition, although the contrary has been held in England. There was no error in the admission of the testimony.* See *Durkee* v. *Vermont Central Railroad*, 29 Vt. 127 ; *Saveland* v. *Green*, 40 Wis. 431 ; *New York & Washington Printing Telegraph Co.* v. *Dryburg*, 35 Penn. St. 298 ; *Wilson* v. *Minneapolis & Northwestern Railroad*, 31 Minn. 481 ; *Anheuser-Busch Brewing Association* v. *Hutmacher*, 127 Ill. 652, 658; *Western Union Telegraph Co.* v. *Shotter*, 71 Ga. 760 ; *Howley* v. *Whipple*, 48 N. H. 487 ; *State* v. *Hopkins*, 50 Vt. 316 ; *Smith* v. *Easton*, 54 Md. 138; *Henkel* v. *Pape*, L. R. 6 Ex. 7.

---

* The plaintiff's wife, called as a witness for the plaintiff, testified that her husband had received numerous telegrams from Spindell to him, which had been destroyed. The plaintiff then offered secondary evidence of the contents of these telegrams. The defendants objected, on the ground that the originals of the telegraphic messages were the messages as delivered to the telegraph company. The judge ruled that, where the sender of a telegram takes the initiative, as between him and the person to whom it is sent the original is the message as delivered to that person, and that, on a proper foundation being laid, secondary evidence of the contents of the telegrams was admissible ; and, having found that the absence of the telegrams as delivered to the plaintiff was accounted for, allowed the witness to testify as to their contents. Against the objection of the defendants and their exceptions thereto, she testified that the telegrams contained requests from Spindell to her husband to meet him at a certain place. There was evidence tending to show that the telegrams were sent by Spindell.

The instruction, " that if the plaintiff rendered the services and incurred the expenses in question at the request of Isaiah Spindell, acting in his own behalf and representing the defendant Augustus S. Messer, and if the plaintiff rendered said services expecting to be paid for them, he would be entitled to recover the value of his services and the expenses incurred by him," was not given as the whole law of the case, but is to be considered in connection with the other instructions, which required the jury to determine the relation of the plaintiff to the transaction and to the defendants at the time of bringing the suit.    So considered, it contains no error.

*Exceptions overruled.*

*H. P. Harriman & F. J. Daggett*, for the defendants.
*C. F. Chamberlayne*, for the plaintiff.