ALEXIS MORNEAULT *vs.* SAMUEL COHEN AND TRUSTEE.

Aroostook.    Opinion May 16, 1923.

*A dispatch given to a telegraph company is generally held to be the original and should be proved, unless the moving party makes the company his agent, then the message delivered at destination is the original.    In absence of evidence to show mistake in transmission, as between sender and receiver, a message delivered may be treated as the original.    A reply message in answer to another is competent evidence.    An offer by telegram accepted by telegram before revocation constitutes a complete contract.    Copies of telegrams are admissible if proper foundation is laid.    The rule of damages in cases where acceptance of the goods purchased is refused, is the difference between the purchase price and the price received less cost and expenses of resale.    No exceptions lie to a refusal to give instructions which amount to a nonsuit.*

In the instant case the evidence and progress of the case clearly established the identity of the defendant as S. Cohen, sender of the telegrams. As to the admissibility of the copies, the foundation having been laid by the plaintiff in his testimony and by the testimony of the telegraph operator at Grand Isle, the copies of the telegrams were properly admitted.

When a party commences correspondence by telegraph, he makes the company his agent, and then the message delivered at the destination is the original. Where the sender of a telegraphic message takes the initiative, the message as delivered may, as between him and the person to whom it is sent, be treated as the original, in the absence of evidence to show mistake in the transmission of it, and on proper foundation being laid.

A reply message from the destination office in answer to another is competent evidence.

Where an offer is accepted by telegram before a telegram revoking it has been sent, and the acceptance is received before the revocation of the offer is received, there is a complete contract.

If the purchaser of goods refuses to accept and pay for them, the owner may at once resell them for the most he can get for them and charge the first purchaser with the difference between the contract price and the price actually obtained.

If the goods have been resold by the vendor within a reasonable time after the breach of contract by the purchaser, the measure of damages will be the difference between the price agreed to be given and the price realized on the resale, with the costs and expenses of resale.

On exceptions. An action of assumpsit for alleged breach of contract in the sale of a car-load of potatoes. Plea, the general issue, and under a. brief statement the statute of frauds was set up. The case was tried to a jury and a verdict for plaintiff was rendered. Exceptions were taken to several rulings of the presiding Justice and to several refusals to rule as requested. Exceptions overruled.

The case is stated in the opinion.

*Shaw & Cowan,* for plaintiff.

*A. B. Donworth,* for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, DUNN, DEASY, JJ.

HANSON, J. This is an action of assumpsit to recover damages for breach of a contract to sell and deliver a car-load of potatoes. The jury returned a verdict for the plaintiff for $407.22. The case is before the court on defendant's exceptions.

The transaction involved grew out of certain telegrams.passing between the parties which are as follows:—

1. "Northern and Western Union. Telegram.

New York, N. Y. Jan. 20, 1920.

To ALEXIS MORNEAULT
    Grand Isle, Maine.

Will give four dollars and thirty five cents hundred one car U. S. Grade number one Mountains buying same through broker.

O. K. A C, 11.50 A. M.                                    S. COHEN."

2. "Northern and Western Union Telegram.

Grand Isle, Jan. 20, 1920.

To S. COHEN
    New York, N. Y.

Accept offer four thirty five delivered Harlem will ship soon as get heater.

                                            ALEXIS MORNEAULT.

O. K. A c, 5.15 P. M."

3.  "Northern and Western Union Telegram.

New York Jan. 30, 1920.

ALEXIS MORNEAULT
    Grand Isle, Me.

You must ship car three sixty five you can cancel car four thirty five you have charge heater company for losses.

S. COHEN.

O. K. A C 11.50 A. M."

4.  "Northern and Western Union Telegram.

New York, N. Y. Jan. 31, 1920.

To ALEXIS MORNEAULT
    Grand Isle Maine

Wire immediately if you are shipping the two cars.

S. COHEN.

O. K. A C 1.16 P. M."

5.  "Northern and Western Union Telegram.

New York Feby. 2, 1920.

ALEXIS MORNEAULT
    Grand Isle, Me.

Do not ship that four thirty five car    could not wait any longer have bought elsewhere   as soon as you will have heater wire me. Will see what can do.

S. COHEN."

The potatoes in question were not delivered at Harlem River, but remained in the plaintiff's possession after defendant's refusal to receive them.  They were later sold to other parties by the plaintiff at a reduced price, and this suit followed.

Defendants' counsel presents twelve exceptions. Exception No. 1 is to the ruling of the presiding Justice denying defendants' motion for a directed verdict. This exception has the same effect as a motion for a new trial on general grounds. In this case the verdict seems to be amply warranted, and the exception must, therefore, be overruled. *Berry* v. *Railway*, 109 Maine, at 332.

Exceptions Nos. 2, 3, 4, 5, and 6, relate to the admission by the presiding Justice of copies of all the telegrams in the case. The objection raised was based upon counsel's claim that the defendant was not identified as the sender of the telegrams 1, 3, 4 and 5, and that copies of the original telegrams were not admissible.

We think the evidence and progress of the case clearly established the identity of the defendant as S. Cohen, sender of the telegrams. As to the admissibility of the copies, the foundation having been laid by the plaintiff in his testimony, and by the testimony of the telegraph operator at Grand Isle, the copies of the telegrams were properly admitted. Those exceptions must be overruled.

The facts in the instant case bring it within the decisions following: "As to which message is the original, it is generally held that the despatch given to the telegraph company is the original, and should be proved. The exception to the rule is, when the party commences correspondence by telegraph, he makes the company his agent, and then the message delivered at the destination is the original." See *Howley* v. *Whipple*, 48 N. H., 487; *Anhauser Bush Brewing Assn.* v. *Hutmacher*, 127 Ill., 652. Where the sender of a telegraphic message takes the initiative, the message as delivered may, as between him and the person to whom it is sent, be treated as the original, in the absence of evidence to show mistake in the transmission of it, and, on proper foundation being laid, secondary evidence of the contents of the telegram is admissible. *Nickerson* v. *Spindell*, 164 Mass., 25, and cases cited; note page 28. Greenleaf on Evidence, 16th Ed., Vol. 1, Page 697, Note 1. See *Ayer* v. *Western Union Telegraph Co.*, 79 Maine, 493, citing *Durkee* v. *Vermont C. R. R. Co.*, 29 Vt., 137, wherein it was held that where the sender himself elected to communicate by telegraph, the message received by the other party is the original evidence of the contract. In *Cleveland* v. *Green*, 40 Wis., 431, the message received from the telegraph company was admitted as the original and best evidence of a contract, binding on the sender. In *Morgan* v. *People*, 59 Ill., 58, it was said that the telegram received

was the original and it was held that the sheriff receiving such a telegram from the judgment creditor was bound to follow it, as it read.   There are dicta to the same effect, in *Wilson* v. *M. & N. Ry. Co.*, 31 Minn., 481, and *Howley* v. *Whipple*, 48 N. H., 488.   See also note to *Smith* v. *Eastman*, (54 Md., 138), 39 Am. Rep., 355.   A reply message from the destination office in answer to another is competent evidence.   *Cairo & St. L. R. Co.* v. *Mahoney*, 82 Ill., 73; *Wilson* v. *Minnesota & N. W. R. Co.*, 31 Minn., 481; See 50 L. R. A., 250-253, Note.

Exception No. 7 is to that part of the charge of the presiding Justice relating to damages, and must be overruled.   After restating the history of the transaction and adverting to the place of sale and place of delivery, the presiding Justice charged the jury as follows:   "If you do find, however, for the plaintiff, you come to the question of damages, and only in that event, then you will consider what the carload of potatoes would have been worth at the price offered in these telegrams at Harlem River, the plaintiff paying the freight, and you will deduct what he sold them for at Grand Isle, or wherever he did sell them, here in Aroostook County, and whether that was a fair sale or not, and the difference is the amount of damages which you will assess."   This instruction correctly states the law, and moreover, it is not perceived where the defendant was prejudiced thereby.

Exception No. 8 is overruled for the same reason, as in 2, 3, 4 and 5, involving the identity of the sender of the telegrams signed "S Cohen."

Exceptions Nos. 9 and 10, are to the refusal of the presiding Justice to instruct the jury that, 1, "inasmuch as telegram number 1 was to buy through a broker, and that as there was no acceptance to buy through a broker, that there was no contract, 2, that the refusal of the presiding Justice to instruct the jury that the plaintiff did not accept the offer, and hence there was no contract."   These exceptions are overruled.   The refusal was proper.   The instructions, if given, would have been equivalent to a nonsuit.   The refusal is therefore not the subject of exception.   The instructions were correct in detail. No exceptions lie to a refusal to give instructions which amount to a nonsuit.   *Bunker* v. *Gouldsboro*, 81 Maine, 196; *Hoyts, etc. Co.* v. *Atlantic Ry.*, 111 Maine, 108; *Auburn* v. *Union Water Power Co.*, 90 Maine, 71; *Dudley* v. *Poland Paper Co.*, 90 Maine, 260.   That there was a contract considered by the defendant as binding on him

clearly appears in telegram No. 2, where the defendant, ten days after the contract was made, tried to 'cancel' it. "Where a party telegraphs and offers his wheat, of the quality and grade proposed, at a certain price, and the other party answers accepting the proposition, that moment the minds of the parties meet in agreement, and the contract of sale is complete." *Andrews* v. *Schrieder,* 93 Fed. Rep., 367. "Where an offer is accepted by telegram before a telegram revoking it has been sent, and the acceptance is received before the revocation of the offer is received, there is a complete contract." *Brauer* v. *Shaw,* 168 Mass., 198.

Exception No. 11 is to the refusal of the presiding Justice to instruct the jury that the measure of damages is the excess of the contract price over the market price at Harlem River. Exception No. 12, is to the refusal to instruct the jury, "that the potatoes left with Morneault, on Morneault's hands in Aroostook County, have nothing to do with the assessment of damages." These exceptions are urged in evident good faith and will be so regarded. Both involve and relate to the rule of damages, and both requests were sufficiently covered by the instructions of the presiding Justice particularly as the same relate to Exception 7. The rights of the parties and the rule for recovery in damages in similar cases are well defined and settled. "If the purchaser of goods refuses to accept and pay for them, the owner may at once resell them for the most he can get for them and charge the first purchaser with the difference between the contract price and the price actually obtained." *Atwood* v. *Lucas,* 53 Maine, 511. "If the goods have been resold by the vendor within a reasonable time after the breach of contract by the purchaser, the measure of damages will be the difference between the price agreed to be given and the price realized on the resale, with the costs and expenses of resale. Addison on Contracts, Vol. 2, Page 477; *Atwood* v. *Lucas,* supra." *Tufts* v. *Grewer,* 83 Maine, 407. The plaintiff acted within his rights, and the instructions of the presiding Justice were in accordance with settled law.

The entry will be,

*Exceptions overruled.*